```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Candy Hudon

    v.                                    Civil No. 10-cv-405-JL
                                             Opinion No. 2011 DNH 143
Michael Astrue, Commissioner,
Social Security Administration


**MEMORANDUM ORDER**


Cathy Hudon appeals the denial of her claim for disability insurance benefits and supplemental security income benefits. She contends that the Administrative Law Judge ("ALJ") did not adequately account for the severity of her mental impairments in the residual functional capacity assessment and did not give appropriate weight to her treating source's opinion. The Commissioner moves to affirm the decision, acknowledging certain inconsistencies in the ALJ's decision but attributing them to "scrivener's error." This court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).


**I.  BACKGROUND**

Hudon applied for social security benefits on September 5, 2007, claiming a disability beginning on March 15, 2007. Hudon was thirty years old at the time of her application. She alleged

that she was disabled by degenerative disc disease, depression, anxiety, attention deficit hyperactivity disorder, personality disorder, obesity, and a headache disorder.

### A.   Medical history and opinions

Hudon's medical records show that she began treatment for back and leg pain in 2004.  Tests revealed spinal abnormalities, including degenerative disc disease.  A functional capacity assessment in December of 2004 indicated that she was limited to sedentary work.  Further testing in 2007 showed continuing abnormalities.

Beginning in October of 2008, Dr. Carol Ribner provided treatment to Hudon, as her primary care physician.  Hudon had recently been discharged from an addiction treatment program with medication to control cravings.  In January of 2009, Hudon began psychotherapy with Elaine C. Davis, MS LCMHC MLADC.[1]  Following the death of her mother, Hudon reported stress and other issues to Dr. Ribner and to Davis.

---

[1] Although the parties do not explain Davis's degrees, which are indicated by the letters following her name, it appears that she holds a Master of Science degree and is a Licensed Clinical Mental Health Counselor and a Master Licensed Alcohol and Drug Counselor.

2

On September 18, 2009, Davis completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" in which she indicated that Hudon had marked limitations in understanding and memory, social functioning, and ability to maintain concentration, persistence, or pace.  On October 19, 2009, Davis provided a letter, stating that Hudon was unable to work due to major depression, panic disorder, and post traumatic stress disorder.  In December, Dr. Ribner wrote that Hudon was deeply depressed, had missed appointments, and had used drugs after a fight with her daughter.  Hudon told Dr. Ribner that she was overwhelmed.

Hudon was hospitalized in February of 2010.  She was diagnosed with anxiety disorder, acute stress reaction, and other mental health problems.  In March of 2010, Dr. Ribner noted that Hudon was somewhat improved but remained depressed.

State agency review during 2008 provided several opinions of Hudon's limitations.  Elizabeth Hess, Ph.D., did a consultative psychological examination on May 26, 2008.  Dr. Hess recorded Hudon's statements about her symptoms and limitations.  Dr. Hess diagnosed Hudon with polysubstance dependence, attention deficit and hyperactivity disorder and post traumatic stress disorder (both based on her history), and personality disorder.  Dr. Hess said that Hudon could understand and remember basic work

instructions but that she would have significant difficulty interacting with others and in sustaining and completing tasks.

A non-examining psychologist, Patricia Salt, PhD., completed a Psychiatric Review Technique Form based on Hudon's medical records.  Dr. Salt found marked limitations in social functioning and in concentration, persistence, or pace.  Dr. Salt also stated that Hudon's polysubstance abuse could not be excluded for purposes of evaluating her functioning.

Bruce Lipetz, Psy.D, also reviewed Hudon's records and completed a Psychiatric Review Technique Form.  Dr. Lipetz disagreed with both Dr. Hess and Dr. Salt.  Dr. Lipetz concluded that Hudon's polysubstance abuse was the most clear limiting factor.  He found no more than moderate limitations in the areas of social functioning and concentration, persistence, or pace.

Dr. Fairley completed a physical residual functional capacity assessment on June 4, 2008.  He found that Hudon could lift and carry twenty pounds occasionally and ten pounds frequently; could stand, walk, and sit for six hours in an eight hour work day; and could only occasionally do certain postural activities.  He also found that Hudon would require a sit or stand option.

## B.   Administrative process and decision

Hudon's application for disability benefits was denied initially on July 25, 2008.  She requested a hearing, which was held on April 6, 2010, in Manchester, New Hampshire.  Hudon testified in person at the hearing.  Her representative appeared by telephone, and a vocational expert testified by telephone.

The ALJ issued a decision on April 14, 2010, denying Hudon's application for benefits.  In the decision, the ALJ found that Hudon had severe impairments of mild degenerative disc disease, mild recurrent major depressive disorder, anxiety disorder, personality disorder, and polysubstance abuse in partial remission.  The ALJ determined that Hudon retained the residual functional capacity to perform light work with limitations for occasional postural activities and for simple, repetitive work in a low stress environment, meaning that she would have only superficial social contact with her co-workers and supervisors and only superficial contact with the public.  Based on that residual functional capacity, the vocational expert testified that a person with Hudon's abilities and limitations could work as a cleaner, a laundry worker, and in manufacturing sub-assembler jobs.  Relying on the vocational expert's opinion, the ALJ found that Hudon was not disabled.

The Decision Review Board did not complete review within the time allowed, making the ALJ's decision the final decision of the Social Security Administration.  Hudon filed for review in this court.

## II.  **APPLICABLE LEGAL STANDARD**

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Social Security, 211 F.3d 652, 655 (1st Cir. 2000) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  In addition, it is the responsibility of the ALJ to resolve conflicts in the evidence.  Irlinda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  If the ALJ's factual findings are supported by "substantial evidence," they are "conclusive," even if the court disagrees with the ALJ, and even if other evidence supports a contrary conclusion.[2]  42 U.S.C. § 405(g); see also, e.g., Nguyen, 172 F.3d at 35.

---

[2]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Becker v. Sec'y of Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

That standard is not, however, "merely [a] rubber stamp [of] the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (quotation and bracketing omitted). If the ALJ's decision was based on "a legal or factual error," or otherwise unsupported by substantial evidence, then it must be reversed and remanded under § 405(g). Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996); see also, e.g., Nguyen, 172 F.3d at 35 (noting that an ALJ's findings are not conclusive where they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts").

### III.  ANALYSIS

Hudon moves to reverse and remand the decision denying her application for benefits on the grounds that the ALJ's residual functional capacity failed to account for the ALJ's finding that Hudon had experienced three episodes of decompensation and that the ALJ failed to give proper weight to the opinion of her treating therapist. In response, the Commissioner argues that the ALJ's finding that Hudon had experienced three episodes of decompensation was "an obvious scrivener's error" and, therefore, was properly omitted in considering her residual functional capacity. The Commissioner also contends that the ALJ properly assessed the medical opinions and that the ALJ's stated reliance

on the opinions of both Dr. Salt and Dr. Lipetz, which directly contradict each other, was another scrivener's error.  The Commissioner contends that record evidence supports the ALJ's decision.

### A.  Decompensation finding

In evaluating whether Hudon's impairments met or equaled a listed impairment, Step 3 of the sequential analysis, the ALJ stated:  "As for episodes of decompensation, the claimant has experienced three episodes of decompensation, each of extended duration."  Despite that finding, the ALJ wrote that Hudon had not experienced "repeated episodes of decompensation" and found that her impairments did not meet or equal a listed impairment.[3]  Hudon does not contest the ALJ's conclusion at Step 3 but contends that the ALJ erred in not considering the episodes of decompensation for purposes of assessing her residual functional capacity.

"[Residual functional capacity ("RFC")] is what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's _maximum_ remaining ability to

---

[3]Later in her decision, the ALJ lists three episodes of hospitalization, which may be the episodes of decompensation she referenced in her findings at Step 3.  See Admin. Rec. at 12.

8

do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); 20 C.F.R. § 404.1545.  In making that assessment, the ALJ "will consider all of [the applicant's] medically determinable impairments of which [the ALJ is] aware, including [the applicant's] medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(d), 404.1521, and 404.1523 . . . ."  20 C.F.R. § 404.1545(a)(2).

   The Commissioner contends that the ALJ properly did not consider the episodes of decompensation because the finding was a scrivener's error.  A scrivener's error is a transcription error or a typographical error.  See, e.g., U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 462 (1993); United States v. Cintron-Echautegui, 604 F.3d 1, 4, n.2 (1st Cir. 2010); OneBeacon Am. Ins. Co. v. Travelers Indem. Co., 465 F.3d 38, 41-42 (1st Cir. 2006).  In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent.  See Douglas v. Astrue, 2010 WL 3522298, at *3-*5 (D.S.C. Sept. 3, 2010) (citing and discussing cases).

The ALJ's decompensation finding was made as part of the Step 3 analysis. The ALJ stated that for purposes of the Step 3 analysis, to meet or equal a listed impairment, Hudon's mental impairments would have to result in two of four marked limitations, one of which was repeated episodes of decompensation, each of extended duration. The ALJ then explained that repeated episodes of decompensation meant three episodes within a year or an average of one episode every four months with a duration of two weeks.

The ALJ found that Hudon had only mild restriction in activities of daily living and moderate difficulties with social functioning and concentration, persistence, or pace. The ALJ then made the finding that Hudon had experienced three episodes of decompensation, each of extended duration. The ALJ concluded that because Hudon's mental impairments did not result in at least two marked limitations, she did not meet or equal the listed impairment at Step 3.

The Commissioner argues that the decompensation finding was a scrivener's error because the record does not support the finding. Taken in context and considering the ALJ's later reference to three hospitalizations, however, the record does not necessarily show that the finding was an error. Further, the decision does not show that the ALJ's intent was contrary to the

10

finding.  The ALJ's finding of three episodes of decompensation cannot be excused as an obvious scrivener's error.  Therefore, the ALJ's failure to address the finding in the context of assessing residual functional capacity undermines the evidentiary basis for the ALJ's decision.

### B.  Medical opinions

Hudon also challenges the ALJ's evaluation of the medical evidence and argues that the ALJ improperly evaluated her treating therapist's opinion.  In making a disability determination, the ALJ is required to consider "the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [in the record]."  20 C.F.R. § 404.1527(b).

The ALJ attributes weight to a medical opinion based on the nature of the relationship between the medical provider and the claimant.  § 404.1527(d).  An opinion based on one or more examinations is entitled to more weight than a non-examining source's opinion, and a treating source's opinion, which is properly supported, is entitled to more weight than other opinions.  Id.  A treating source's opinion on the nature and severity of the claimant's impairments will be given controlling weight if the opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d)(2). "If any of the evidence in [the claimant's] case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [the ALJ] will weigh all of the evidence and see whether [she] can decide whether you are disabled based on the evidence we have." § 404.1527(c)(2).

   The ALJ gave the opinions of both state agency physicians, Dr. Lipetz and Dr. Salt, "significant weight" without distinguishing between the opinions. The ALJ characterized Elaine Davis as Hudon's treating source and wrote that she did not give Davis's opinions significant weight because the opinions were not supported by Davis's treatment notes.[4] The ALJ also stated that Davis's "treatment notes are consistent with the

---

   [4] A treating source's opinion will be given more or less weight depending on the evidence provided to support the opinion, the degree to which it is consistent with the record, whether the source is a specialist in the field, and other factors that are raised by the claimant. § 404.1527(d). In all cases, the ALJ will explain the reasons for giving a treating source's opinion more or less weight. Id.; see also LaBreque v. Astrue, 2011 WL 285678, at *4-*5 (D.N.H. Jan. 28, 2011).

   As the Commissioner points out, however, Davis may not be a treating source. See 20 C.F.R. § 404.1513(a). Instead, the ALJ may have erred in her designation and should have treated Davis as an "other source." See 20 C.F.R. § 404.1513(d)(1); Randall v. Astrue, 2011 WL 573603, at *9 (D. Mass. Feb. 15, 2011).

state agency opinion as to the effect of claimant's psychiatric condition on her capacity for work . . . ."  Admin. Rec. at 13.

As the Commissioner acknowledges, Dr. Lipetz's opinion that Hudon was able to sustain simple and repetitive work with limitations on social contact was directly contrary to Dr. Salt's opinion that Hudon had marked limitations in the areas of social functioning and concentration, persistence, or pace.  In fact, Dr. Lipetz criticized Dr. Salt's opinion, stating that it was not supported by the evidence.  Therefore, the ALJ could not give both opinions significant weight and is mistaken in saying that Davis's treatment notes were consistent with both opinions.

The Commissioner attempts to explain the inconsistencies in the ALJ's decision as another scrivener's error.  That does not appear to be the case.  Instead, the ALJ misreported the record evidence and, as a result, lacks consistent substantial evidence to support the decision.

13

## IV.  CONCLUSION

For the foregoing reasons, Hudon's motion to reverse[5] is GRANTED.  The Commissioner's motion to affirm[6] is DENIED.  The case is REMANDED under sentence four of § 405(g).

The clerk of court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 20, 2011

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     T. David Plourde, AUSA

---

[5] Document no. 9.

[6] Document no. 11.

14